## Rogers *v.* R. E. Lee Mining Co. and others.

*(Circuit Court, D. Colorado. December 5, 1881.)*

1. ATTORNEY AND CLIENT—CONTRACTS BETWEEN THEM—WHEN VOIDABLE.

A contract of purchase and sale between an attorney and client is voidable at the election of the latter, where the attorney, while negotiating for the purchase of the property, is acting for the client in a litigation of which it is the subject-matter, and is called upon to advise the client, as an attorney, as to how far such litigation is likely to affect his title to the property, or the value of his interest in it.

In Equity.

*Luther S. Dixon,* for plaintiff.

*Wells, Smith & Mason,* for defendants.

McCRARY, C. J. 1. It is not necessary to decide the question whether an attorney at law can, under any circumstances, purchase *pendente lite,* from his client, the subject-matter of a litigation in which he is employed and acting.

2. Equity will not uphold such a sale, even upon a showing of good faith, where it appears, as in this case, that the attorney, while negotiating for the purchase of the property, was at the same time, and as part of the negotiation, advising the client as to the probable outcome of the litigation concerning it. It is difficult to see how it is possible for an attorney, under such circumstances, to deal with his client at arms-length; for the client's acceptance or rejection of any proposition for a purchase by the attorney, must depend upon the nature of the advice he receives from him touching the pending litigation. In other words, the attorney must, as to an important part of the negotiation, represent both sides; that is, his own private interest, and the opposing interest of his client,—a thing which is manifestly contrary to law and abhorrent to equity. The client must in such a case act upon the attorney's advice and opinion as to the merits of the pending litigation about the property, and by the light of such advice he must fix the price at which he will sell. Even if under some circumstances the property in controversy in a suit may, pending the suit, be sold by the client to the attorney, I am of the opinion that a court of equity ought to hold that such a sale is absolutely void, if the attorney, while negotiating as a purchaser, is called upon to advise the client, as an attorney, as to how far a pending litigation is likely to affect his title to the property, or the value of his interest therein.

It is contrary to the policy of the law, and certainly contrary to the principles of equity, to permit an attorney at law to occupy at the same time and in the same transaction the antagonistic and wholly incompatible position of adviser of his client concerning a pending litigation, threatening the client's title to property, and that of purchaser of such property from the client. If an attorney can deal with his client concerning such property at all, he must, before doing so,—for the time, at least,—divest himself of the character of attorney, so that his former client may deal with him as a stranger. This is not the case when the attorney negotiates with the client as the purchaser of such property, and at the same time advises him as counsel concerning the title to it, or concerning its value, as affected by pending litigation.

3. To sustain a sale from client to attorney, the burden is upon the latter, and he must show that he has done as much to protect the client's interest as he would have done in the case of his client's dealing with a stranger. The court will watch such a transaction with jealousy, and throw on the attorney the burden of proving that the bargain is, generally speaking, as good as any that could have been obtained by due diligence from any other purchaser. An attorney cannot in any case sustain a purchase from his client without showing that he communicated to such client everything necessary for him to form a correct judgment as to the real value of the subject of the purchase, and as to the propriety of selling for the price offered; and neglect of the attorney to inform himself of the state of the facts will not enable him to sustain a purchase from his client for an inadequate consideration. The attorney must show that all the considerations which should have operated to prevent the sale by the client were presented by him with the earnestness of a man who was anxious only for the client's good. It must be made to appear that the client is no worse off than he would have been had he consulted an adviser who had no interest and no selfish end in view. It must appear also that the attorney took such measures to inform himself as to the value of the property offered for sale by the client as are ordinarily taken by persons dealing in such property under like circumstances, and that, being himself thereby informed, he communicated all his information upon the subject to his client. Authorities by which these general rules are established will be found cited in Weeks, Attys. at Law, under the head of "Dealings between Attorney and Client," 450–469, and in 2 White & Tudor, Lead. Cas. in Eq.

(Hare & Wallace's Notes,) part 4, pp. 1216–1225. It does not, in my opinion, appear that respondent Marshall cautioned and advised his client, the complainant, as fully as the law, as above set forth, required.

An attorney who knows nothing of the value of property offered for sale by his client, and is aware that his client is in like ignorance upon that subject, is bound, before advising a sale by the client to a stranger, and *a fortiori* before attempting to purchase from the client himself, to make careful inquiry and to inform himself as fully as possible concerning such value. If a stranger had appeared and opened negotiations with complainant for the purchase of her interest in the mine, and she had applied to Marshall, as her attorney, for advice concerning the sufficiency of the price offered, it would have been his duty, being himself ignorant upon the subject, to advise an investigation by a competent person, as a means of ascertaining the probable or approximate value of the property.

It is true that Marshall had, up to the time when negotiations for a purchase by him commenced, been the attorney of complainant only for the purpose of defending her title, and having no occasion to inquire into the question of the value of the mine; but the moment these negotiations were opened the relation was changed, and it became his duty to use due diligence to ascertain the value of the property as nearly as possible, and to advise complainant or her agent. It was at least his duty to suggest an investigation by the usual method. If he had, without knowledge as to the value of the property, and without suggesting an investigation, advised a sale to a third party at a price which proved to be inadequate, it is clear that he would have failed in his duty, and it is equally clear that he could not purchase under like circumstances. His own ignorance as to the value of the property, so far from being a circumstance in his favor, is a strong reason for holding that he was bound to inform himself, so as to be able to advise his client.

4. I hold further that the respondent Marshall, before consummating his purchase from complainant, was bound to disclose to her, or her agent, the names of all persons interested with him in the purchase, and especially that her partners in the mine were secretly interested as such purchasers. The rule is that the attorney must make a full disclosure of every fact which might influence the decision by the client of the question of the sale. All the presumptions are against the attorney. The court cannot presume that the fact that her partners were secret purchasers with Marshall would have had no

influence upon complainant's mind, if disclosed. If it had been known by her that her copartners wished to purchase part of her interest, and yet did not wish her to know the fact, and had therefore employed Marshall to purchase in his own name for them, it might well have aroused suspicion in her mind, and very probably would have led her to decline to sell, or caused her to employ other counsel, or to institute further inquiry as to the character and value of the property. It has been held that if an attorney can show that he is entitled to purchase property, notwithstanding his character of attorney, yet if, instead of openly purchasing it, he purchases it in the name of a third person without disclosing the fact, the purchase is void. Weeks, Attys. at Law, 463, and cases cited. The same rule must prevail where the attorney, while professing to purchase for himself from his client, really purchases in part for his client's copartners, and suppresses this fact.

5. The parties interested with Marshall in the purchase, and who afterwards took conveyances from him, stand in his shoes, so far as the complainant's rights are concerned. They knew that the relation of attorney and client existed between complainant and Marshall, and they took the chances as to the validity of the latter's purchase. If the sale was void as to him, it is also void as to them, and in that case it is unnecessary to inquire into the allegations or examine the proofs as to misconduct on the part of complainant in connection with the sale in question.

When an attorney purchases from his client in his own name, but in secret trust for third parties, it will not, of course, be insisted that such third parties can be regarded as innocent purchasers, or as entitled to any greater rights or better title than the attorney himself secures.

NOTE. It is a rule, founded both upon common sense and authority, that whenever two persons stand in such a relation that, while it continues, confidence is necessarily reposed by one in the other, and the influence which naturally grows out of that confidence is possessed by the other, and this confidence is abused, or the influence is exerted to obtain an advantage at the expense of the confiding party, the person so availing himself of his position will not be permitted to retain the advantage, although the transaction could not have been impeached if no such confidential relation had existed. Evans, Agency, *256, 290; 1 Story, Eq. Jur. § 218, 309, et seq.; Tate v. Williamson, L. R. 2 Ch. 61; Gillenwaters v. Miller, 49 Miss. 150. Where a known and defined fiduciary relation exists, the conduct of the party benefited must be such as to sever the connection and to place him in the same circumstances in which a mere stranger would have stood, giving him no advantage, save only whatever

kindness or favor may have arisen out of the relation. Evans, Agency, *256, 290; *Hunter* v. *Atkins*, 3 M. & K. 113. The sound policy upon which these rules are founded appears nowhere more forcibly than in transactions between attorneys and counsel and their clients; and there are no transactions which courts of equity will scrutinize with more jealousy than dealings between attorneys and their clients, especially where the latter are persons of inferior capacity and inexperienced in business. *Mills* v. *Mills*, 26 Conn. 213. See, also, *Nesbit* v. *Lockman*, 34 N. Y. 167; *Hitchings* v. *Van Brunt*, 38 N. Y. 342; *Downing* v. *Major*, 2 Dana, 228; *Newman* v. *Payne*, 2 Ves. 201.

No gratuity or gift to a legal adviser, beyond his fair professional demand, made during the time that he continues to conduct or manage the affairs of the donor, will, as a rule, be permitted to stand, more especially if such gift or gratuity arises immediately out of the subject then under the adviser's conduct or management, and the donor is at the time ignorant of the nature and value of the property so given. Evans, Agency, 290; *Middleton* v. *Welles*, 1 Cox, 112; *Proof* v. *Hines*, Cas. in Eq. (Talbot,) c. 115; *Brown* v. *Kennedy*, 33 Beav. 133; S. C. 4 De G., J. & S. 217.

A court of equity will not enforce in favor of a solicitor a security taken from his client, pending a suit, for anything beyond the sum actually due the solicitor. *Mott* v. *Harrington*, 12 Vt. 199. See, also, *Phillips* v. *Overton*, 4 Hayw. 291; *Downing* v. *Major*, 2 Dana, 228; *Greenfield's Estate*, 14 Pa. St. 489; *Leutt* v. *Sallee*, 3 Port. 115; *Rose* v. *Mynatt*, 7 Yerg. 30; *Brown* v. *Bulkley*, 14 N. J. Eq. 451.

So, whenever an attorney is called upon to render services to a client, whether to prepare a deed or will, the law will impute to him a knowledge of all the legal consequences likely to ensue, and requires that he should clearly point out to his client all those consequences from which a benefit may arise to himself from the instrument so prepared; and if he fails to do so he will not be allowed to retain the benefits. Evans, Agency, 295; *Watt* v. *Grove*, 2 Sch. & Lef. 491; *Bulkley* v. *Wilford*, 2 C. & F. 102.

And, generally, in matters of contract between legal advisers and their clients, the legal advisers may contract with their clients only when the relation is dissolved, or the duties attaching to their position are satisfied. In *Gibson* v. *Jeyes*, 6 Ves. 266, in which the sale of an annuity by an attorney to his client was set aside, Lord Eldon said: "I do not mean to contradict the cases of trustees buying from their *cestuis que trust*, but the relation between the parties must be changed; that is, the confidence in the party, the trustee or attorney, must be withdrawn. * * * An attorney is not incapable of contracting with his client; a trustee also may deal with his *cestuis que trust;* but the relation must be in some way dissolved, or, if not, the parties must be put so much at arm's length that they agree to take the character of purchaser and vendor."

In the case of a contract of purchase and sale between an attorney and client or principal and agent, or of an agreement giving benefits and advantages to the agent or attorney, proof of actual fraud on the part of the agent or attorney is not necessary in order to set aside the contract; the burden of establishing its perfect fairness, adequacy, and equity is upon the agent or attorney, and, in the absence of such proof, courts of equity treat the case as

one of constructive fraud.   *Waters* v. *Thorn*, 22 Beav. 547; *Parkist* v. *Alexander*, 1 Johns. Ch. 394; *Condit* v. *Blackwell*, 22 N. J. Eq. 481; *Banks* v. *Judah*, 8 Conn. 146; *Central Ins. Co.* v. *National Ins. Co.* 14 N. Y. 91; *Judah* v. *Trustees*, 23 Ind. 272; *Huguenin* v. *Baseley*, 14 Ves. 273; *Lowther* v. *Lowther*, 13 Ves. 102; *Selsey* v. *Rhodes*, 2 Sim. & Stu. 41; *Fox* v. *Mackreth*, 2 Bro. Ch. 400; *Gibson* v. *Jeyes*, 6 Ves. 278; 1 Story, Eq. Jur. § 311. "An attorney buying from his client can never support it unless he can prove that his diligence to do the best for the vendor has been as great as if he was only an attorney dealing for that vendor with a stranger." *Gibson* v. *Jeyes, supra*, per Lord Eldon.  See, also, *Howell* v. *Ransom*, 11 Paige, 538; *Holman* v. *Loynes*, 4 L. J. Ch. 209; *Gibbs* v. *Daniel*, 4 Giff. 1, in which last case the purchase by solicitors of a client's equity of redemption was set aside, although another solicitor had been called in, and although the defendants had ceased to act as solicitors just before the contract.  The solicitor called in, however, in this case had not done his duty, and the defendants were aware of the fact.

Tested by the above rules, which are grounded both upon sound public policy and authority, there can be no doubt whatever of the entire soundness of the decision in the principal case, which, though not novel in principle, is an interesting application of a salutary and well-settled rule of equity.

*Union College of Law, Chicago, January* 7, 1882.

MARSHALL D. EWELL.