### Rogers v. Marshall and others.

*(Circuit Court, D. Colorado. 1882.)*

1. ATTORNEY AND CLIENT—PURCHASE OF PROPERTY IN LITIGATION.

An attorney at law cannot purchase from his client the subject-matter of litigation in which he is employed and acting, if, as a part of his negotiations for the purchase, he advises his client as to the probable outcome of the litigation, and its effect upon the value of the property he is seeking to purchase.

2. PLEADING—ALLEGATIONS—TO BE PROVED.

In cases where the answer neither admits nor denies some of the material allegations of the bill, they must be proved upon the final hearing.

3. REHEARING—APPLICATION, WHEN DENIED.

An application for a rehearing, upon the ground of newly-discovered evidence, where the affidavits filed in support of the motion show that the newly-discovered evidence is merely cumulative, will be denied.

*Luther S. Dixon* and *W. B. Felker*, for complainant.

*John F. Dillon, J. B. Henderson, Geo. W. Kretzinger,* and *N. A. Cowdrey,* for respondents.

McCRARY, C. J. This important case has been exhaustively re-argued by eminent counsel upon a petition for rehearing, based (1) upon the record as it stood at the former hearing, and (2) upon alleged newly-discovered evidence. The questions raised, some of them now for the first time, have been carefully considered, and the conclusions reached are as follows;

1. On the former hearing it was held, as will be seen by the opinion then announced, that an attorney at law cannot purchase from his client the subject-matter of litigation in which he is employed and acting, if, as a part of his negotiations for the purchase, he advises his client as to the probable outcome of the litigation, and its effect upon the value of the property he is seeking to purchase. Counsel for respondents, both upon the former hearing and upon the reargument, have insisted that such is not the law, and that if under such circumstances the attorney can show that he gave honest and sound advice concerning the pending litigation, and otherwise discharged the duties imposed upon him by fully disclosing all his knowledge of the value, etc., the sale is valid. There are certainly some respectable authorities holding that a purchase by an attorney from his client of the subject-matter of the litigation *pendente lite* is void not only for champerty, but also on grounds of public policy. *West* v. *Raymond,* 21 Ind. 305; 4 Kent, Comm. (10th Ed.) 530; *Simpson* v. *Lamb,* 17 Com. B. 306; *Hall* v. *Hallett,* 1 Cox. 134; *Wood* v. *Downes,* 18 Ves. 120. I will assume, however, (without deciding,) that the rule is the other way, and that an attorney may purchase from his client the subject-matter of the suit in which he is employed and acting, provided before the negotiations are opened the relation of attorney and client is ended, or at least for the time being suspended, and the client placed in a position to deal with the attorney upon terms of perfect equality. It may be conceded that such is the rule, and still the doctrine heretofore announced in this case may be perfectly sound.

According to all the authorities, it is, at all events, clear that in order to uphold such a transaction the client must be placed in a position such as to enable him to deal with the attorney at arm's length, and upon terms of perfect equality. The relation of attorney and client must be, so far as the transaction of purchase and sale is concerned, dissolved and ended. In that transaction the attorney cannot act as such. If it becomes necessary or desirable for the client to be advised as to the nature of the pending litigation, and the danger to his title to be apprehended therefrom, as a means of determining the question of selling or of fixing the price, the attorney must decline to give him advice upon those points, and the client must employ other counsel, or act upon his own judgment. There is a plain and necessary distinction between the right of the attorney under such circumstances to give the client information touching the value of the property in the market, and his right to advise him upon

the legal questions involved in the pending litigation. As to the former he and his client may be equally well advised, and when they are so advised they may stand on an equality and at arm's length; but as to the latter this is not so. The questions of law presented by a litigation in which the attorney has been employed are matters within his peculiar knowledge; he deals with them as an expert; they are frequently questions of a technical, and always a professional, character. They are often questions which go to the very root and marrow of the inquiry which the seller must make in determining the price at which he will sell. This is well illustrated by the present case, since it appears that Marshall, the attorney, was defending for the complainant and others certain suits involving the validity of her title, and which, if decided adversely to her, would have destroyed every vestige of her property in the mine. It follows, therefore, that to decide the question whether these suits were well grounded, or whether there was danger of a decision therein adverse to complainant, was to decide upon the question of the value of complainant's interest. To allow Marshall to advise her or her agent upon this question was to enable him to influence materially the fixing of the value of the property while negotiating for its purchase. The law will not permit an attorney to deal with his client in this way. Such dealing is manifestly against the policy of the law—as much so as a purchase by a guardian from his ward, or that of a trustee from his *cestui que trust.* Such transactions are not held to be void upon the ground of intentional fraud, or proven bad faith, but because the relations of the parties are such that the one may make use of his position of power and influence over the other, or of his superior knowledge derived while in the employment of the other, to take an unfair advantage of him. The law, upon grounds of high public policy, seeks to destroy the temptation to abuse such opportunies, and therefore does not inquire whether the transaction was fraudulent or not. In such a case the attorney, by continuing to advise the client about the pending litigation, while at the same time negotiating for the purchase of the property in controversy in such litigation, confounds his position as attorney with that of purchaser, and, however honest he may be, the purchase is not permitted in any case.

"The general interests of justice requiring it to be destroyed in every instance, and no court is equal to the examination and ascertainment of the truth in much the greater number of cases." *Hawley* v. *Cramer*, 4 Cow. 737.

"Where fidelity is required, the law prohibits everything which presents a temptation to betray the trust. The orison which deprecates temptation is the offspring of infinite wisdom, and the rule of law in accordance with it rests upon most substantial foundations." *Henry* v. *Raiman,* 25 Pa. St. 359.

"Where the law creates fiduciary relations it seeks to prevent the abuse of confidence by insuring the disinterestedness of its agents. It holds the relations of judge and party, of buyer and seller, to be entirely inconsistent. The temptation to the abuse of power for selfish purposes is so great that nothing less than incapacity is effectual, and thus a disqualification is wrought by the mere necessity of the case. Fullness of price, absence of fraud, and fairness of purchase are not sufficient to countervail this rule of policy. To give it effect it is necessary to recognize a right in the former owner to set the sale aside in all cases on repayment of the money advanced." *Armstrong* v. *Huston's Heirs,* 8 Ohio, 554.

Upon this branch of the case, after full reconsideration of the question, I am constrained to adhere to the rule announced upon the former hearing.

2. It is insisted that the relation of attorney and client did not in fact exist between the complainant and Marshall at the time of the sale. The proof shows, to my entire satisfaction, that the relation did exist at that time. Without recapitulating the evidence upon this point, it is sufficient to say that, in my judgment, it clearly shows that Marshall was employed by the persons known as the "Colorado Springs parties," of which complainant was one. These persons were joint owners of the same interest in the mine. Nothing was more natural than that the same counsel should be retained for all. The record shows that Marshall appeared for the complainant as well as for the others. That complainant was aware of this arrangement and acquiesced in it is abundantly shown, and nothing more was necessary to constitute the relation of attorney and client. I think it is also clear that, while other attorneys were consulted, Marshall, who resided at Leadville, where the mine is situated, was chiefly relied upon. I am also satisfied that the attorney's fees were to be paid, and were paid, out of the proceeds of the mine. The original evidence tends to show this, and if it were not so it would have been distinctly denied by some or all of the respondents. Add to these considerations the fact that the relation is distinctly admitted by all the respondents in their amended answer, and I think the fact must be regarded as settled. It is true that the suits against the complainant and others had, at the time of the sale, been suspended with the understanding that, in case of a compromise, they should be dis-

missed; but they had not been dismissed, and it was well understood that if the settlement was not accomplished the suits must go on. So that the relation of attorney and client existed in full vigor. If complainant did not sell, she had to contemplate a continuance of the litigation as, at least, possible. The questions involved in the litigation, in case it did go on, were of the gravest importance to her, and it was upon the nature and character of those questions, and the danger to be apprehended from an adverse decision of them, that the advice of Marshall was sought and obtained upon her behalf as a part of the negotiations for the sale.

3. It is insisted that complainant has not shown that she ever had a valid title to a share in the mine, or that the respondent, the Robert E. Lee Mining Company, bases its claim of title upon the conveyance executed by her to Marshall. This is a very material question in the case, and it is now for the first time presented. It has been heretofore assumed that the complainant was the owner, in equity at least, of the undivided one-third of the mine at the time of her sale and conveyance to Marshall. The title to the mine is now in the respondent, the Robert E. Lee Mining Company, conveyance to that company having been made some time after the purchase by Marshall. If that company is a subsequent purchaser, with notice of the rights of the complainant, it may be charged as trustee for complainant to the extent only of the interest which she had, and which the company had acquired. But if the complainant had no title, and the company acquired nothing by virtue of her conveyance to Marshall, she cannot, of course, subject to her use any title it derived from another source. It is now said that complainant held under an option bond; that all her rights under said bond had been forfeited; that she had no title; and that the company derived a perfectly good title from the patentee. If so, the fact may be shown; and if shown, the complainant cannot recover as against the company. Further consideration of this defense will be reserved until proof applicable to it has been produced and the parties are heard thereon.

4. It is insisted that the respondent, the Robert E. Lee Mining Company, is a *bona fide* purchaser for value and without notice. Upon the consideration of this part of the defense some very important questions may arise respecting the rights of the corporation, and as to how far and under what circumstances notice to the incorporators, stockholders, or directors will constitute notice to the corporation. The further consideration and final determination of these questions may well be postponed until the final hearing.

5. It is insisted that complainant should be denied relief on the ground of laches. As at present advised, I should be inclined to hold that the complainant's delay in bringing suit, and her failure promptly upon discovering the fraud to give notice of her purpose to rescind the contract of sale, are fatal to her right of recovery, at least as against the respondents who are not named in the original bill. I shall, however, reserve the determination of this question until the final hearing.

6. Some of the material allegations of the bill are not denied by the answer, and the question is made whether such allegations stand admitted or must be proved. Upon re-examination of the authorities I have reached the conclusion that in cases where the answer neither admits nor denies the allegations of the bill, they must be proved upon the final hearing. *Young* v. *Grundy*, 6 Cranch, 51; *Brown* v. *Pierce*, 7 Wall. 211; *Brooks* v. *Byam*, 1 Story, 297.

7. It is insisted that the complainant has not shown that Marshall secretly purchased on behalf of Howbert and his associates. The conclusion reached upon the former hearing, that Howbert, Sigafus, Crowell, and Humphrey were secretly interested in the purchase made by Marshall, was based partly upon the pleadings, and the failure of the respondents distinctly to deny the allegations of the bill upon this subject, and partly upon the evidence and the facts and circumstances which, in the judgment of the court, clearly pointed to this conclusion. Leaving out of view any consideration of the pleadings in the case, I am still inclined to adhere to the conclusion originally announced. As, however, it may not be entirely clear that all of the defendants here named were advised of Marshall's intended purchase, and promised an interest therein before it was consummated, I am disposed to leave this question open for further consideration upon the final hearing.

8. The application for rehearing upon the ground of newly-discovered evidence is next to be considered. The affidavits filed in support of this application show that the newly-discovered evidence is directed mainly, if not wholly, to the following questions: (1) What was the actual value of the complainant's interest in the mine at the time of her sale to Marshall? (2) Was there actual fraud or concealment practiced by Marshall in making said sale? (3) Did the relation of attorney and client exist between complainant and Marshall at that time? Upon all of these points the proposed testimony, even if newly discovered and material, is only cumulative. These points were fully litigated upon the former hearing, and accord-

ing to the well-settled rule in such cases they cannot now be reopened for further consideration. The objection to the admission of the alleged newly-discovered evidence, on the ground that it consists of the testimony of witnesses who have been once examined, is also well taken. A court of equity cannot afford to establish a precedent which will allow the defeated party, after discovering where the cause pinches, to look out witnesses to bolster up the faulty parts of his cause. To allow this would be to make litigation practically interminable, and would also lead to perjury. *Ruggles* v. *Eddy*, 11 Blatchf. 524; *Page* v. *Tel. Co.* 18 Blatchf. 118; *Jones* v. *Purefoy*, 1 Vernon, 45; *Finley* v. *Tyler*, 3 T. B. Mon. 400; *Brewer* v. *Bowman*, 3 J. J. Marsh. 492.

The application for rehearing upon the questions above stated, on the ground of newly-discovered evidence, is overruled.

The result of the foregoing views is that the interlocutory decree heretofore rendered must be set aside, and that the case must be considered as reopened for further hearing upon the following questions only:

(1) Whether the complainant must fail in this action upon the ground that she had no title to the one-third interest in the mine which she sold and conveyed to Marshall. (2) Whether the respondent, the Robert E. Lee Mining Company, is, as against the complainant, an innocent purchaser for value and without notice. (3) Whether the complainant must fail in this action upon the ground of laches.

The respondents may amend their answer on or before the September rules, by making any allegations proper to put in issue the matters of defense above stated, and the complainant may reply *instanter*, or under the rules. Both parties are at liberty to take further testimony upon the points here indicated.