BARKER PLACE, as Executor, etc., Appellant, *v.* J. K. HAYWARD, Respondent.

On the trial of an action before a referee, at the close of the plaintiff's evidence, the defendant, without announcing that he rested his case, moved "that the complaint be dismissed on the merits;" the referee granted the motion and plaintiff's counsel excepted. The referee subsequently made his report which contained findings of fact and of law, with the conclusion that the complaint should be dismissed on the merits and that a judgment should be rendered against plaintiff on the merits of the action, with costs to defendant. On settlement of the case plaintiff's attorney, on notice, moved to have the referee "change or modify his findings so that the decision on the final motion will be judgment for the defendant dismissing the complaint with costs, and not a judgment or decision or finding upon the merits." The motion was denied and an exception taken. *Held,* that the action of the referee was equivalent to a nonsuit; that he should have made no finding of fact, except such as would justify a nonsuit; and so, had no right to make any findings depending upon disputed or inconclusive evidence; and that, to maintain the judgment, defendant was bound to show there was no disputed material question of fact which, upon a jury trial, the court would have been required to submit to the jury, and that upon the undisputed evidence he was entitled to judgment.

The action was brought by plaintiff, as executor, to recover certain moneys alleged to have been received by defendant to and for the use of plaintiff as executor. The moneys in question were received by defendant, and all the dealings with reference thereto took place between him and plaintiff after the death of the testatrix. Defendant claimed on the trial that the plaintiff could not maintain the action in his representative capacity. The referee, however, before any evidence was given, decided that the action was maintainable. *Held,* that the ruling, even if erroneous became the law of the case, and defendant having had judgment in his favor, could not complain; and that the nonsuit could not be sustained on appeal on the ground that the action was not so maintainable.

Plaintiff and defendant's wife were children of the testatrix and interested in the estate. Plaintiff's evidence was to the effect that among the assets which came to his hands as executor were a bond and mortgage and two endowment policies of insurance issued to the testatrix upon the life of her husband; that plaintiff, under the advice of defendant, who was his attorney, and upon whose counsel and direction he implicitly relied in the management of the estate, they both fearing that said securities might be seized by adverse claimants, creditors of the testator's husband, assigned them to defendant for the purpose of protecting them against such claimants, and without any consideration whatever being paid for

said assignments, with the understanding that the proceeds should belong to the estate; that defendant collected the insurance policies and received a portion of the proceeds of collection of the bond and mortgage. The action was brought to recover the amounts so received. *Held*, that the moneys when received by defendant became the property of the estate and that plaintiff was not estopped by the assignments; that it was not necessary to bring an action to set them aside, but plaintiff could recover the amount in an action for money had and received; that if any wrong was committed or intended by the transfers the parties were not in *pari delicto;* also, that the maxim *ex turpi causa non oritur actio* did not apply to the plaintiff prosecuting in his representative capacity for the benefit of the estate.

Also, *held,* the fact that plaintiff, under the advice of defendant, entered in the inventory of the estate the amount ostensibly received on assignment of the mortgage, and verified the inventory, did not furnish conclusive evidence of the receipt thereof.

(Argued October 29, 1889; decided December 10, 1889.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made January 7, 1889, which affirmed a judgment in favor of defendant, entered on the report of a referee.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Charles F. Wells* for appellant. This action was properly brought by the plaintiff in his representative capacity, and the complaint correctly charged that the moneys were received for the use of the executor. (*Fry* v. *Evans,* 8 Wend. 530; *Cowell* v. *Watts,* 6 East, 405; *Buckland* v. *Gallup,* 105 N. Y. 453; *Root* v. *Taylor,* 20 Johns. 137; *Bright* v. *Currie,* 5 Sandf. 433; *Bogert* v. *Hertel,* 4 Hill, 493; *Litchfield* v. *Flint,* 104 N. Y. 543.) If defendant and plaintiff speculated with the assets of the estate, through Fuller as a medium, and divided the profits, Hayward, the attorney, must refund his profits. (*Davone* v. *Fanning,* 2 Johns. Ch. 252; *In re Friedman,* 27 Hun, 301; *Goodenough* v. *Spencer,* 15 Abb. [N. S.] 248; *Ford* v. *Harrington,* 16 N. Y. 285.) The referee should have required proof on the part of such attorney of the *bona fides* of his dealings. (*Evans* v. *Ellis,* 5 Denio, 640;

*Mason* v. *King*, 2 Abb. [N. S.] 322; *Helm* v. *Goodwill*, 64 N. Y. 642; *Whitehead* v. *Kennedy*, 69 id. 466; *Haight* v. *Moore*, 5 J. & S. 161; *Brock* v. *Barnes*, 40 Barb. 527.) These moneys in the hands of Hayward were impressed with a trust character, as he must have received them with knowledge of the facts. (*Lee* v. *Horton*, 104 N. Y. 592; *Lawrence* v. *Townsend*, 88 id. 31; *Wetmore* v. *Porter*, 92 id. 76; *Schofield* v. *Hernandez*, 47 id. 313.)

*J. K. Hayward* for respondent. Since plaintiff denies a pledge, he cannot recover on the theory of a pledge without amending. (*Blanchard* v. *Strait*, 8 How. 83; *Phillips* v. *Melville*, 10 Hun, 211; *Newman* v. *Merwin*, 12 id. 238; *McAdam* v. *Allen*, 12 How. 39.) Plaintiff mistook his remedy. (*Booth* v. *Farmers' Bank*, 65 Barb. 457; *Thompson* v. *Whitmarsh*, 100 N. Y. 35; *Woodworth* v. *Burnett*, 43 id. 276; *Calmon* v. *S. A. R. R. Co.*, 38 id. 201; *Schreppel* v. *Corning*, 6 id. 109.) Pleading an indebtedness in the words merely of "money had and received" to plaintiff's use is demurrable and warrants a dismissal. (*Lienan* v. *Lincoln*, 2 Duer, 670, 672.) Pleading an indebtedness in the words merely "money had and received" is case instead of assumpsit. (*Booth* v. *Farmers' Bank*, 65 Barb. 457.) A representative trial on an individual cause of action warrants dismissal where individual cross-relief is set up. (*Patterson* v. *Patterson*, 59 N. Y. 574.) The complaint should have been dismissed when the opening showed plaintiff's transactions only litigable individually with individual counter-claims, and plaintiff refused to amend or try an individual action. (*Thompson* v. *Whitmarsh*, 100 N. Y. 35; *Patterson* v. *Patterson*, 59 id. 579; *Cary* v. *Bloodgood*, 6 J. & S. 137; *Austin* v. *Monroe*, 47 N. Y. 360; *Ferrin* v. *Myrick*, 41 id. 315.) The complaint should have been dismissed when plaintiff's attorney disclaimed individual trial and insisted on representative, according to the formal words of his pleading. (*Bright* v. *Currie*, 5 Sandf. 435; *Thompson* v. *Whitmarsh*, 100

N. Y. 35; *Scranton* v. *Bank*, 33 Barb. 537; *Cary* v. *Bloodgood*, 6 J. & S. 137.) Had plaintiff's pleadings set. forth the transactions relied on, he would have been estopped denying the mortgage character of the transaction. (*McCrea* v. *Purmot*, 16 Wend. 460; Story's Eq. Juris. 371;. *Shabold* v. *Bassett*, 1 Lans. 124; *Calkings* v. *Lang*, 22 Barb. 97; *Gilleland* v. *Failing*, 5 Den. 313; *Jackson* v. *Hornsey*, 16 Johns. 91; *Nellis* v. *Clark*, 20 Wend. 24.) By these over-advances of the executor the assets became the property of the executor himself, in equity as well as in law, which any purchaser could set up for his own protection. (Plowd. 186; *Farr* v. *Newman*, 4 T. R. 640;. *Livingston* v. *Newkirk*, 3 Johns. Ch. 317; *Sedgwick* v. *Place*, 5 Otto, 9, 10; 1 Story's Eq. Juris. 423, 581.) A pledgor cannot set up as sham an executed pledge while holding on to the alleged sham consideration. (*Davis* v. *Davis*, 6 Jur. [N. S.] 1320; *Martin* v. *Rigter*, 3 Stoct. Ch. 510; *Eldred* v. *Haslitt*, 33 Penn. 307; *Blackwood* v. *Jones*, 4 Jones Eq. 54; Story's Eq. Jur. [17th ed.] 1542; 1 Fonbl. on Eq. 181, chap. 3; *Ryan* v. *Dox*, 34 N. Y. 312.) Setting up as fraud in a later creditor the allegation that. he helped the plaintiff cheat a former does not make out a cause of action against the former. (Story's Eq. Jur. [10th ed.] 371; *Osborne* v. *Moss*, 7 Johns. 161; *McCrea* v. *Purmot*, 16 Wend. 460; *Nellis* v. *Clark*, 2 id. 26; *Stronach* v. *Stronach*, 20 Wis. 129–133; *Hills* v. *Sherwood*, 48 Cal. 386; *Haynes* v. *Harris*, 33 Iowa, 516; Broom's Legal Maxims.) One executor cannot traverse another executor's transfers. (1 Story's Eq. Jur. 424, note 581; *Parker* v. *Wilson*, 15 Wend. 345.) Payment by means of a trust deed to a third party, as regards usury, is held to be made as of the date of the deed, which here was more than six years before suit begun. (*Schreppel* v. *Corning*, 6 N. Y. 107; *Smith* v. *Marvin*, 25 How. 326.) Plaintiff's payment to Hayward through this Fuller trust was the same as if made by his own check, and he must base his revocation upon an equitable right to a return of the money. (*Livingston* v. *Newkirk*, 3 Johns. Ch. 312; *Souther--*

*land* v. *Brush*, 7 id. 21 ; 1 Story's Eq. Jur. §§ 423, 424 n, 581; Broom's Leg. Max. 218–227 ; *Palen* v. *Johnson*, 50 N. Y. 49.)

EARL, J. . This action was brought by the plaintiff, as sole acting executor of Susan A. Place, deceased, against the defendant to recover three sums of money alleged to have been received by him to and for the use of the plaintiff. One item was a sum of $10,000 and upwards alleged to have been received by him upon a bond and mortgage which came to the plaintiff as executor. The other two items, amounting together to about $12,000, were alleged to have been received by him upon two endowment policies issued to the testatrix upon the life of her husband, James K. Place, which became due subsequently to her death, in November, 1885. The action was referred to a referee and tried before him, and at the close of the plaintiff's evidence, the defendant, without announcing that he rested his case, moved " that the complaint be dismissed on the merits," and the referee granted the motion and the plaintiff's counsel excepted. Thereafter the referee made his report, containing findings of fact and of law, and concluding that the complaint should be dismissed on the merits and judgment rendered against the plaintiff on the merits of the action, with costs to the defendant. Subsequently, upon the settlement of the case, this took place :

" On settlement of case on appeal the plaintiff's attorney having in his proposed case given the following notice :

" A motion will be made upon the case before the referee to change or modify his findings so that the decision on the final motion will be judgment for the defendant dismissing the complaint, with costs, and not a judgment, or decision or finding, upon the merits.

" And the plaintiff's attorney having made said motion, the same is denied by the referee on the whole case and the plaintiff's attorney excepts."

Section 1209 of the Code provides as follows : " A final judgment, dismissing the complaint either before or after a

trial, rendered in an action hereafter commenced, does not prevent a new action for the same cause of action unless it expressly declares, or it appears by the judgment-roll, that it is rendered upon the merits."

The defendant, by procuring a dismissal of the complaint on the merits, probably had this provision of the Code in mind, and intended to procure a judgment that would bar a new action for the same cause. And the plaintiff's counsel by the motion he made on the settlement of the case sought to have the dismissal in such form that the judgment would not bar a new action. The precise scope of that provision of the Code we do not now determine. Nevertheless, what the referee did was to nonsuit the plaintiff. We can give no other significance to the proceeding. Therefore, he should have made no findings of fact except such as would justify a nonsuit upon the trial. Under the Code the referee was required to make findings of fact and of law after granting the nonsuit; but he had no right to make any findings of fact depending upon disputed or inconclusive evidence. Therefore, to maintain this judgment, the defendant is bound to show that there was no disputed question of fact which, upon a jury trial, the court would have been required to submit to the jury, and that upon the undisputed evidence he was entitled to judgment. (*Scofield* v. *Hernandez*, 47 N. Y. 313.)

As these moneys were received by the defendant after the death of the testatrix, and as all the dealings with reference thereto between him and the plaintiff took place after her death, he claimed upon the trial that the plaintiff could not, in his representative capacity, maintain this action, but that the same should have been instituted by him in his individual name. But the referee held before any evidence had been given that the plaintiff could maintain this action in his representative capacity, and that ruling then became the law of the case; and even if erroneous, the defendant having had judgment in his favor cannot now complain of it. But, upon the argument here, he expressly waived any objection that the plaintiff could not maintain this action in his representative

capacity, and, therefore, this nonsuit cannot be maintained upon the ground, if a valid one (which we do not determine), that the plaintiff in his representative capacity could not maintain the action.

The plaintiff is not, by anything which appears in the case, estopped from claiming against the defendant that the proceeds. of the mortgage and of the insurance policies received by him belonged to and were payable to the plaintiff.

The defendant during all the times of the transactions under consideration was the plaintiff's attorney, and the evidence tends to show that the plaintiff during those times acted under and implicitly relied upon his counsel and direction. It appears, without dispute, that there was fear on the part of the defendant, whose wife was the daughter of the testatrix and a sister of the plaintiff, and interested in the estate of her mother, as well as on the part of the plaintiff, that the mortgage and the insurance policies might be seized by adverse claimants, creditors of the husband of the testatrix; and, therefore, the plaintiff claims that, under the advice of the defendant, on the 22d day of November, 1869, he assigned the mortgage to him for the purpose of protecting the same against such adverse claimants. The consideration expressed in the assignment was $12,000. At the same time the defendant executed to the plaintiff the following instrument :

"I, J. K. Hayward, agree to reassign the mortgage of $25,000 to Barker Place on the repayment of the sum (principal and interest) loaned to Barker Place by said Hayward.

"J. K. HAYWARD."

The plaintiff and his father, who, at the time, had the principal management of the estate of the testatrix, both testified that the assignment of the mortgage was merely formal, without any consideration whatever, and that not a dollar, at any time, was paid to the plaintiff for the same. On the sixteenth day of April thereafter the defendant, by an assignment. absolute in form, in consideration of $12,000, paid to him by W. J. A. Fuller, assigned the mortgage to him; and, on the

twenty-third day of April thereafter, Arthur T. Sullivan, who was at that time one of the executors of the will of Susan A. Place, for the recited consideration of $1, also executed an assignment of the same mortgage to Fuller. The mortgage was subsequently foreclosed and Fuller received as the net proceeds of the foreclosure $33,949.29 ; and the defendant having repaid to Fuller the $12,000 which he had paid for the mortgage and the interest thereon, Fuller gave a check for the amount payable to the order of the defendant and to the plaintiff as executors. Twenty-five thousand nine hundred and forty-nine dollars and twenty-nine cents of the proceeds of that check came to the hands of the plaintiff, and $8,500 thereof came to the hands of the defendant, and that sum, at least, and the interest thereon, the plaintiff claimed to recover in this action.

These various assignments do not estop the plaintiff from recovering in this action, and it was not necessary for her to bring an action to set them aside before she could recover. If it is true, as claimed by the plaintiff, and as testified to by him and his witnesses, that the defendant never paid a dollar for the mortgage, and received the $8,500 without any consideration, under an original understanding and agreement by which the proceeds of the mortgage were really to belong to the estate represented by the plaintiff; if he received such proceeds, professing to the plaintiff to act in his interest and in the interest of the estate, then when he received them they became money which belonged to the estate, and the plaintiff can recover the money in this form of action for money had and received. The money having been received by the defendant, in pursuance of the arrangement and understanding between him and the plaintiff, he cannot set up the assignment to him which has become *functus officio*, as an absolute bar to plaintiff's claim. The instruments executed are evidence, and may be very persuasive evidence in the defendant's favor, showing that he and Fuller became the owners in some way successively of the mortgage, he as pledgee and Fuller as absolute owner. But their force and

effect as evidence are to be weighed in connection with all the other facts; and it cannot be said that there is not a very strong conflict in the evidence when three witnesses on the part of the plaintiff testify absolutely that there was no sale of the mortgage, and no transfer of it upon any consideration whatever.

The considerable delay which took place, after the transactions of which the plaintiff complains, before he commenced this action, furnishes no defense to the action, but is a fact to be weighed with all the other evidence in the case. Nor does the fact that the plaintiff entered in the inventory of his mother's estate the sum of $12,000, as received from the mortgage, furnish absolute evidence that he actually received that sum from the defendant, or from any other source. He testified that it did not represent money received by him, but that he inserted the amount in his inventory under the direction of the defendant, and further verified the inventory at the same instigation, although the item was not, in fact, true. The facts connected with the making of the inventory do not estop the plaintiff, but constitute evidence against him to be weighed with the other evidence.

So, too, the plaintiff must not necessarily fail in this action because these assignments of the mortgage and the insurance policies were made to keep them out of the way of the creditors, not of Mrs. Place, but of her husband. There was no intent to defraud creditors of the estate, and, so far as I can discover from the case, no actual intent to defraud any one. It was not so alleged in the answer, and the intent was certainly not conclusively proved upon the trial. It is, undoubtedly, true that where one transfers property to another for the purpose of cheating his creditors, the courts will not aid him to recover it back for the reason that he and his grantee have been engaged in a fraud and a crime, and being *in pari delicto* the courts will not aid either of them. But here, if any wrong was committed, or intended, by these transfers, the plaintiff and the defendant were not *in pari delicto,* and the defendant cannot invoke the rule mentioned

for his protection. He was the plaintiff's lawyer and the plaintiff was acting under his direction. He was advised that the transfers were necessary to protect and cover up the property against the assaults of the creditors of his father. The scheme was concocted and carried out under the advice of the defendant; and under such circumstances there is no reason for enforcing the rule invoked by the defendant. As between the parties, there was no absolute transfer, but a transfer made for the benefit of the estate and to save the property to the estate; and the rule of law referred to should not, under such circumstances, be so applied as to aid the defendant in holding property thus acquired, and to thus enable him to consummate a wrong and a fraud upon the estate. (*Goodenough* v. *Spencer*, 15 Abb. [N. S.] 248; *Ford* v. *Harrington*, 16 N. Y. 285.) Still further, the maxim *ex turpi causa non oritur actio* does not apply to the plaintiff prosecuting in his representative capacity for the benefit of the estate he represents, and so we held in *Wetmore* v. *Porter* (92 N. Y. 76).

It is the claim of the defendant that, at the time of the transfer of the mortgage to him, he loaned the plaintiff $19,000 for the benefit of the estate, and that this mortgage was transferred to him as part security for that loan. But the plaintiff and his father both testified that the mortgage was not transferred for that purpose; that the $19,000 was not loaned to the plaintiff, but to the firm of Place & Co., and that a large portion of that loan had been paid by the firm to the defendant, and that the defendant took and held the firm notes payable to his wife for whatever balance was due him on account thereof.

There was, therefore, evidence bearing upon the claim of the plaintiff to the proceeds of the mortgage received by the defendant to be weighed, and if the referee, upon the evidence, had found that the $8,500 received by the defendant out of Fuller's check, or, at least, a large portion of it, was due to the plaintiff, the finding would have been so far sustained by the evidence that this court could not have disturbed it.

The two insurance policies were assigned by the plaintiff to

Fuller December 2, 1870.   The plaintiff claims that the assign-
ments were made under the advice of the defendant for the
purpose of protecting the policies against the claims of the
creditors of James K. Place, and that they were merely formal
without any consideration whatever.   And there is evidence
tending very strongly to show that his claim is well founded.
The defendant received upwards of $12,000, the entire pro-
ceeds of the policies in 1875, and there is evidence tending to
show that he received this sum without any consideration, and
that at the time he received it the money equitably and justly
belonged to the estate represented by the plaintiff.

In these transactions with the plaintiff the defendant was
acting as his legal adviser.   He was not only his lawyer, but
his brother-in-law, thus bearing toward him very confidential
relations.   As against the plaintiff, under such circumstances,
he was required to make very strict and satisfactory proof of
his right to these moneys, and not leave that right to be
spelled out by inferences of doubtful import.   The burden
was upon him to establish affirmatively that his transactions
with his client were fair and just; that his client acted on full
information of all the material circumstances, and that he did
not take undue advantage of his client's complacency, confi-
dence, ignorance or misconception.   ( *Whitehead* v. *Kennedy*,
69 N. Y. 462.)

He should have the full benefit of the documentary evi-
dence showing that the title to this money had passed out of
the plaintiff; but that evidence should be weighed with
all the other evidence, and thus the truth reached and the
rights of the parties determined, due influence being given
to the confidential relation mentioned.   Therefore, if we
regard the disposition made of this case at the close of the
plaintiff's evidence as a nonsuit, the exception thereto was well
taken, and for that reason the judgment should be reversed.

But we must reach the same conclusion if we should assume
upon this record that the case was closed upon both sides and
finally submitted to the referee, and that he took all the evi-

dence into consideration, weighing it, and made his findings accordingly. The trial was not altogether a satisfactory one. It was conducted with considerable passion, at least upon one side; and many questions were put on the cross-examination of the plaintiff and one of his witnesses which cannot be justified by any rules of law. The objectionable questions were so numerous that we cannot take time to comment upon them particularly, or to show their bearings or connection with other evidence.†   *   *   *

I do not perceive how any of these questions were proper or material. It is possible that some of them could have been allowed in the discretion of the referee upon cross-examination, and that many of them were harmless. But the latitude of cross-examination allowed transcended the bounds of a reasonable discretion.

The insurance policies were assigned to Fuller, but I find in the case no evidence whatever that they were assigned to him upon any consideration or benefit at the time passing to the plaintiff or to the estate, and the findings of fact by the referee to the contrary of this are without support.‡   *   *   *

The eighth finding of law is as follows:

"Barker Place is estopped to deny the security import of his deeds or the absolute sale character of Sullivan's transfer, except in an action brought for the purpose of setting them aside."

This is an erroneous view of the law, as I have already shown, and it may be, and it is, indeed, probable that it was the application of the rule of law therein involved that influenced and largely controlled the decision. The plaintiff was not estopped in this action from denying that he made the transfers of the mortgage or policies either absolutely or as security. He had the right to show that the moneys claimed by him came to the defendant's hands under the arrangements

† Numerous questions are here quoted in the opinion. As they present no point of general interest they are omitted.

‡ The portion of the opinion omitted here is taken up with a discussion of various findings of the referee.

and understanding testified to by him and his witnesses, and that the moneys, notwithstanding the formal character of the transfers, actually belonged to him.

The ninth finding of law is tainted with the same error. As we have before stated, an action for money had and received is the proper remedy to recover the proceeds of these choses in action in the hands of the defendant upon the facts alleged and testified to by the plaintiff and his witnesses.

So, whether we treat the disposition of this case by the referee as a nonsuit, or a decision after final submission of the case upon the merits, and after weighing the evidence, I think the judgment should be reversed.

While I may not fully comprehend it, I have carefully studied the case and have reached the conclusion that the ends of justice require that there should be a new trial in the calm atmosphere which should surround a judicial inquiry, that the facts may be more fully developed, and what is now left obscure and uncertain may be cleared up.

I have not intended to intimate any opinion as to the merits of the controversy between these parties, as we have only the evidence upon one side ; nor do I even express any opinion as to the weight of the evidence now before us. The new trial is granted solely for the errors of law pointed out.

The judgment should be reversed and a new trial granted, costs to abide event.

All concur.

Judgment reversed.