In the Matter of FRANK P. DEMAREST, an Attorney at Law.

FRANK P. DEMAREST, Appellant; KATE R. TEVIS, Respondent.

*Purchase, at a discount, by an attorney's wife of a mortgage held by his client — liability of the attorney where his wife realizes a larger sum therefrom than she pays therefor.*

The burden is upon an attorney to establish affirmatively that his transactions with his client were fair and just; that his client acted on full information of all the material circumstances, and that he did not take undue advantage of his client's complacency, confidence, ignorance or misconception.

This rule is most strictly enforced where the subject-matter of the purchase is the matter in litigation.

Upon an appeal by an attorney from an order directing him to pay $1,000 to his client, one Tevis, it appeared that the client held a second mortgage for $2,200 upon premises owned by Russell Sage and that she had retained the attorney to protect her interests in an action brought for the foreclosure of the first mortgage thereon. After judgment was entered in that action the attorney advised his client that Russell Sage would probably not allow the premises to be sold to her, but would bid above her, in his own interests. At the first sale of the property Sage appeared and offered to give $500 for the second mortgage, but this proposition was declined. Afterwards the client authorized the attorney to assign the mortgage to Sage for $500 and directed him to so advise Sage. Subsequently the client executed an assignment of her mortgage to the wife of the attorney for $500. Thereafter, upon a second sale, Sage was driven to a settlement by which he paid for the second mortgage, then held by the wife of the attorney, $1,500.

*Held*, that the attorney was bound to return to his client the sum of $1,000, which was realized by his wife, upon the purchase by Sage of the second mortgage, in excess of the amount paid by her therefor.

APPEAL by Frank P. Demarest from an order of the Supreme Court, bearing date the 13th day of July, 1896, made at the Orange Special Term and entered in the office of the clerk of the county of Rockland, directing him to pay to Kate R. Tevis the sum of $1,000.

*Richard S. Harvey*, for the appellant.

*F. K. Pendleton*, for the respondent.

CULLEN, J.:

The petitioner, Kate R. Tevis, was the owner of a second mortgage on premises in Rockland county. An action for the foreclosure of the first mortgage on that property had been commenced. The appellant was retained by her as an attorney to represent and protect her interests in that action. The action proceeded to judgment. As the time for the sale under that judgment approached consultations were had between the attorney and his client as to how her interests should be protected at the sale. Her mortgage was for $2,200. The amount due upon the first mortgage, with costs and expenses, was about $3,700. It appeared that the petitioner was substantially without means with which to buy in the property on the sale and protect herself. The appellant advised that, despite this, he should bid for her at the sale, and that in his. opinion one Russell Sage, who was the owner of the equity of redemption, would not let the property be sold to her, but would bid above her in his own interests. At the first sale of the property Sage appeared, and negotiations were had between him and the appellant concerning the petitioner's mortgage. Sage offered to give $500 for it. This the appellant declined, but offered to transfer it to Sage for $1,500. This proposition was refused and no agreement was reached. Afterwards the petitioner authorized the appellant to assign the mortgage to Sage for $500, and directed him to write to Sage to that effect. The appellant did not write to Sage because, as he says, Sage had been informed that the petitioner would accept his offer of $500, and he had been told that Sage would send a check to him for that amount. Afterwards the peti--

tioner executed an assignment of her mortgage to the appellant's wife for the sum of $500, and received in payment the appellant's check for $450, $50 being deducted for his services as attorney. As to the circumstances of this assignment the parties are in controversy. The petitioner testifies that the appellant informed her he had received the money from Sage, and that she executed the assignment under the belief that it was an assignment to Sage, made in pursuance of the previous negotiations between Sage, her attorney and herself. On the other hand, the appellant testified that he informed the petitioner that Sage had not sent the money to take up the mortgage; that he asked the petitioner if she was willing to sell the mortgage to any one else instead of Sage for the sum of $500; that she replied that she was, and thereupon he agreed to purchase it from her. In pursuance of that agreement the assignment was made to his wife, and he paid her his check. When the property was again put up for sale under the judgment, the appellant had a lawyer present to bid up the property on behalf of his wife. This drove Sage to a settlement by which he paid the appellant $1,500 for the petitioner's mortgage, then held by the appellant's wife. This proceeding is brought to compel the appellant to pay to the petitioner the additional $1,000 received by him from Sage.

As there is here a substantial controversy as to certain facts, if the determination of those facts was necessary for a decision of the petitioner's rights, we should not be inclined to dispose of this matter on a summary application, but leave the petitioner to her remedy by action. But we think that, even on the state of facts claimed by the appellant, his purchase from the petitioner of the mortgage cannot stand, and that her right to the additional sum he obtained from Sage is clear. Assuming that the transaction was a purchase by the appellant from the petitioner of the mortgage, " the burden was upon him to establish affirmatively that his transactions with his client were fair and just; that his client acted on full information of all the material circumstances, and that he did not take undue advantage of his client's complacency, confidence, ignorance or misconception." (*Place* v. *Hayward*, 117 N. Y. 487; *Whitehead* v. *Kennedy*, 69 id. 462.)

This rule is most strictly enforced where the subject-matter of the purchase is the matter in litigation. In *Rogers* v. *Marshall* (3

McCrary, 76) the learned Circuit judge intimated that a court of equity ought to hold such a sale absolutely void, for, as he says, in such a negotiation "the attorney must * * * represent both sides, that is, his own private interest and the opposing interest of his client, a thing which is manifestly contrary to law and abhorrent to equity. * * * If an attorney can deal with his client concerning such property at all, he must, before doing so, for the time at least, divest himself of the character of attorney so that his former client may deal with him as a stranger. This is not the case when the attorney negotiates with the client as the purchaser of such property, and at the same time advises him as counsel concerning the title to it, or concerning its value as affected by pending litigation." Here the attorney admits that he knew the value of the property to be about $6,000, a sum which, if realized at the sale, would pay the petitioner's mortgage in full. But further, and what is more important, he had made the bargaining with Sage. If the petitioner could not raise the money to protect herself at the sale, her sole reliance would necessarily be what she could force Sage to pay in settlement. What the prospects were of a settlement with Sage and what price Sage could probably be forced to offer, were matters necessarily far better known to the attorney than to his client. It was for his advice and aid in such negotiations that he was retained as attorney. It would be grossly unfair to permit him to take advantage of the knowledge he thus obtained as the petitioner's paid adviser to make a profitable bargain with his own client.

It appears that Sage has since stopped the payment of his check. The appellant should not be compelled to pay money which he has not received. If he is in a condition to turn over the check to the petitioner, then she, as a condition of. relief, should restore to him the $450 and take the check.

The order appealed from should, therefore, be so modified that if the appellant tenders the petitioner the check received by him from Sage and she refuses to return to him the sum of $450, then this application should be denied, but if he fails to tender her the check, then the order in all respects should stand, with ten dollars costs and disbursements.

All concurred.

Order modified so as to provide that if the appellant tenders the petitioner a check received by him from Sage, and the petitioner refuses to return to him the sum of $450, then the application is denied, but if appellant fails to tender petitioner the check, then the order appealed from is in all respects affirmed, with ten dollars costs and disbursements.